IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA GONZALEZ<br>201 Tanager Court<br>Warrington, PA 18976<br><br>        Plaintiff,<br><br>v.<br><br>GWYNEDD MANUFACTURING, INC.<br>800 East Walnut Street<br>North Wales, PA 19454<br>   and<br>GEISSELE AUTOMATICS, LLC d/b/a<br>GEISSELE AUTOMATICS<br>800 East Walnut Street<br>North Wales, PA 19454<br><br>        Defendants. | CIVIL ACTION<br><br>NO.: _____<br><br><br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Victoria Gonzalez (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Gwynedd Manufacturing, Inc. and Geissele Automatics, LLC d/b/a Geissele Automatics (hereinafter collectively referred to as "Defendants") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 et seq.), and the Pennsylvania Human Relations Act ("PHRA").[1]  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of hostile work environment, gender discrimination, sexual harassment, and age discrimination with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. Gwynedd Manufacturing, Inc. (hereinafter individually referred to as "Defendant GM") is a defense manufacturing contractor located at the above-captioned address.

9. Geissele Automatics, LLC d/b/a Geissele Automatics (hereinafter individually referred to as "Defendant GA") is a manufacturer of high-quality firearm components located at the above-captioned address.

10. Defendants operate as a single enterprise defense contractor manufacturing advanced products and technologies for the U.S. Department of Defense and federal law enforcement agencies (and selling such products nationally through other means as well).

11. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single and/or joint employer for purposes of the instant action. Defendants operate from the same address, with the same operations and resources and by the same management.

12. At all times relevant herein, Defendants acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

14. Plaintiff was employed by Defendants as a Senior Quality Manager for approximately 5½ months, from on or about March 31, 2025, until her unlawful termination (discussed further *infra*) on or about September 19, 2025.

15. During Plaintiff's entire period of employment, she reported to Director of Manufacturing Operations, Chris Eckert (hereinafter "Eckert").

16. Plaintiff had also reported to Jim Rutan (hereinafter "Rutan") during her last several weeks of employment with Defendants. Rutan had been hired by Defendants in or about August of 2025 as its Chief Operating Officer ("COO"). Notably, Rutan self identifies at the "Chief Operating Officer (COO), Geissele Automatics/Gwynedd Manufacturing" on his own public LinkedIn profile. *See* https://www.linkedin.com/in/jim-rutan-443495190/.

17. From a Human Resources ("HR") standpoint, Plaintiff interacted with HR Manager, Leah Hartzel (hereinafter "Hartzel"), who oversaw both Defendants.

18. Throughout Plaintiff's brief tenure with Defendants, she was an incredibly hard-working employee who performed her job well.

19. Plaintiff is a 55-year-old adult female.

20. A supervisory employee who was somewhat lateral to Plaintiff was Quality Assurance Manager, Brandon Ford (age 30s, hereinafter "Ford"), who supervised in-process and engineers.

21. Plaintiff performed a supervisory role as a counterpart to Ford on other aspects of processes, quality control, troubleshooting, audit, and related matters.

22. During her tenure with Defendants, however, Ford subjected Plaintiff and other female employees to severe and pervasive unwelcomed sexually harassing, offensive, and disgustingly inappropriate comments/treatment, as well as derogatory gender and age-related comments/discriminatory treatment to Plaintiff specifically.

23. Ford engaged in sexual commentary or jokes nearly every week, often multiple times per day and directed toward Plaintiff.

24. Ford discussed sexual aspects of women and things he would like to do about Plaintiff with lube (lube which was for calibration tooling in the workplace), and about a host of other topics.

25. Ford, upon return from softball practices/games with other employees, would make sexual jokes about holding a bat, including references to swinging the bat like he swings "other things" in bed.

26. Ford also condoned such behavior in his direct reports.  For example, Plaintiff witnessed Ford telling other employees about an incident that occurred over a weekend, shortly after her hire, where Ford was laughing and stating that another female employee, Angela Benitez (hereinafter "Benitez") had complained that a male employee had said to her, "I like your camel toe."

27. Plaintiff immediately advised Ford that the male employee should not continue working next to Benitez and that it should be reported to HR immediately, but Ford continued to joke about and relay this sexually harassing behavior (which had occurred more than once to Benitez) even after HR got involved, the male direct report was sent home, and an investigation had commenced.

28. Plaintiff also alerted Eckert that repeated sexual harassment of this nature by both the male direct report and Ford's mocking retelling of the harassment could result in legal liability to the company.

29. Ford also repeatedly referred to several female employees, including Hartzel, as "sweet cheeks," treating women as mere objects.  Male employees were not subjected to such offensive, degrading, and demeaning comments by Ford.

30. The fact that Hartzel in HR, among other members of management, effectively condoned Ford's behavior by not taking remedial action, is particularly alarming.

31. Instead, Ford was compelled and/or permitted to make non-stop sexual remarks that Plaintiff found inappropriate and/or offensive, which continued for the entire duration of Plaintiff's employment.

32. Ford also engaged in age-based commentary or jokes throughout the entire period of Plaintiff's employment.

33. For example, Ford would make mocking and disparaging comments about Plaintiff and other older female employees as being "senior," referenced their advanced age, that they were "older," and about what Plaintiff should or should not do at her age.

34. On one occasion when Plaintiff mentioned not signing up for a shooting competition within Defendants because she needed a bit more control and practice with her wrist, Ford made a remark with sexual connotation about what Plaintiff should be practicing for wrist action.

35. During that same conversation, Ford also mockingly stating that Plaintiff should apply for the senior division in the competition as she would likely win being the only person in that age group (over 50) there. Several other male employees in attendance laughed at Ford's discriminatory age-related comments.

36. During a meeting with Eckert and Ford to talk about equally distributing tasks between Ford and Plaintiff, there was discussion that Plaintiff should take on internal audits given her experience in prior employment. Ford, however, mockingly stated that Plaintiff should take on the audits "because of how old you are – I mean your experience – no let's be honest, I mean how old you are."

37. Despite being a clearly age-related derogatory comment, and that Plaintiff pointedly looked at Eckert while Ford was disparaging her, Eckert simply assigned the task to Plaintiff without counseling, correcting, or addressing Ford's behavior.

38. When discussing the employment of another older female employee, Valerie Clybourn (age 60s), Ford discriminatorily stated, in the presence of Hartzel ("HR"), "she is too

6

old, it's time for her to go."   While Hartzel chidingly stated to Ford, "you can't say things like that," no remedial action or discipline was ever taken against Ford.

39. Plaintiff estimates Ford made a discriminatory ageist comment at least 2-4 times per month in Plaintiff's presence (unlike the sexual commentary, which was nearly daily). Plaintiff found such remarks inappropriate and/or offensive.

40. Defendants, as a whole, seemed to echo Ford's sentiments regarding being "too old" to remain working for them, as no fewer than 4 employees over the age of 50 were laid off just prior to Plaintiff's termination.

41. As a result of the age-related discriminatory and sexually harassing comments, Plaintiff viewed the work environment as hostile and complained directly to Ford asking him to repeatedly stop (which he ignored or laughed about).

42. Plaintiff also complained on numerous occasions to Eckert, who did not curb or mitigate the work environment.  Instead, Ford continued to make the same offensive remarks but at times saying things like, "but we are not supposed to say this in front of Victoria [Plaintiff]."

43. Plaintiff had also complained to Hartzel on several occasions, but her concerns were ignored.

44. By August 11, 2024, Plaintiff wrote to the aforesaid management complaining *inter alia* that: (a) "[Ford] has repeatedly spoken to me in an unprofessional manner;" (b)  she had previously complained about "comments made regarding  [her] age and crude discussions in [her] presence;" and (c) she endured sexual and age comments to avoid losing her job until recent complaints.

45. Plaintiff also felt as of this timeframe that Ford was intentionally impeding her work and giving her a hard time with respect to work-related matters in retaliation for her complaints of discrimination and a sexually harassing hostile work environment.

7

46. In the weeks prior to her termination (in early September of 2025), Plaintiff talked to Rutan. Specifically, Rutan met with Plaintiff upon his hire and informed Plaintiff, "HR told me about the drama," "HR gave me all of the details," and "this is a safe space."

47. Rutan then asked Plaintiff about what was happening with Ford, and Plaintiff informed Rutan of her concerns of discriminatory and sexually harassing mistreatment.

48. Despite being extremely offended and harassed by Ford's completely unprofessional and unlawful behavior, Plaintiff performed her job in an exemplary manner and had never been disciplined.

49. However, to Plaintiff's knowledge, Defendants refused to discipline Ford for his aforesaid discriminatory and harassing behavior that *Plaintiff* complained about but had done so only for his misbehavior in other ways (as to others).

50. As a result, it appeared to Plaintiff that Defendants believed Ford (who conducted himself very unprofessionally) brought tremendous technical worth to Defendants, which they clearly valued more than lawfully protecting Plaintiff from discrimination, retaliation, and harassment.

51. Thereafter, on or about September 19, 2025, Plaintiff was abruptly terminated by Defendants in an alleged "restructuring."

52. Defendants' reason for Plaintiff's termination – "restructuring" – is completely false and pretextual because ***Plaintiff had only been hired 5½ months ago for a job that was not new and had been performed by other management***.

53. Moreover, Plaintiff was the only person in a company with hundreds of employees subjected to an alleged "restructuring."

54. There is no question Plaintiff was terminated for being vocal and complaining about illegalities with respect to Ford (who was a valued supervisory employee performing a critical role in Defendants' operations).

55. Plaintiff was then offered an unsolicited severance package to waive every possible "discrimination" and "retaliation" claim against Defendants,[2] which she did not sign.

56. Plaintiff believes and therefore avers that she was subjected to severe and pervasive sexual harassment, gender and age discrimination, hostile work environment, retaliation, and ultimately terminated as a result of her gender, her age, and her expressed concerns of sexual harassment, discrimination, hostile work environment, and retaliation.

## COUNT I
## Violations of Title VII
### ([1] Sexual Harassment/Hostile Work Environment; [2] Gender Discrimination; and [3] Retaliation)
### -Against Both Defendants-

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. During her tenure with Defendants, Plaintiff was subjected to severe and/or pervasive sexual comments by Ford, such that she was subjected to a hostile work environment.

---

[2] The offer of a severance package is well-established admissible evidence of discrimination, pretext, and retaliation (which also contradicts any purported performance or misconduct-related rationale for termination should Defendants attempt to shift their reasoning). No policy required Plaintiff to be offered the specific severance under such circumstances. *See e.g., Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn"t warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed. R. Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012) (holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

59. Ford did not sexually harass and subject his male colleagues to such demeaning, derogatory, offensive, and retaliatory behavior set forth *supra.*

60. Ford's harassment of Plaintiff interfered with Plaintiff's work and as a result she was forced to object to said sexual harassment to Ford and multiple members of Defendants' management and HR in advance of her termination.

61. Despite Plaintiff's repeated objections to/complaints of Ford's sexual harassment, to Ford and several members of management, Ford continued to subject her to unwelcomed, offensive, and sexually harassing comments/treatment, and her complaints continued to be ignored.

62. Instead, Plaintiff was abruptly terminated on or about September 19, 2025, for completely pretextual reasons in close proximity to her complaints of/objections to sexual harassment and gender discrimination.

63. Following her termination, despite that Defendants' management was aware of Ford's sexually harassing and discriminatory behavior, which is upon information and belief a terminable offense, Ford has not been terminated and is still employed by Defendants.

64. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, discrimination, retaliation, and termination because of her gender and her expressed complaints of sexual harassment and discrimination.

65. These actions as aforesaid constitute unlawful violations under Title VII.

### COUNT II
### Violation of the Age Discrimination in Employment Act ("ADEA")
([1] Age Discrimination; [2] Hostile Work Environment; and [3] Retaliation)
-Against Both Defendants-

66. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67. During her tenure with Defendants, Plaintiff had no history of significant discipline.

68. Plaintiff was subjected to age-based commentary/jokes/treatment throughout the entire period of her employment.

69. For example, Ford would make mocking and disparaging comments about Plaintiff being a "senior," her advanced age, that she was "older," and about what she should or should not do at her age.

70. Plaintiff objected to the aforementioned instances of age discrimination and disparate treatment by Ford on multiple occasions, but her concerns were ignored, and Defendants' management continued to subject her to hostility, animosity, and disparate treatment because of her advanced age unlike her younger counterparts.

71. Plaintiff was abruptly terminated on or about September 19, 2025, for completely pretextual reasons.

72. Upon information and belief, after Plaintiff was terminated, her work for Defendants has been performed by much younger, less experienced individuals than Plaintiff.

73. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, retaliation, and termination because of her advanced age and her objections to/complaints of age discrimination.

74. Plaintiff also believes and therefore avers that her advanced age was a motivating and/or determinative factor in the termination of her employment by Defendants.

75. These actions as aforesaid constitute unlawful age discrimination and retaliation under the ADEA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting sexual harassment in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

                        Respectfully submitted,

                        **KARPF, KARPF & CERUTTI, P.C.**

By:  _____
                Ari R. Karpf, Esq. (91538)
                8 Interplex Drive, Suite 210
                Feasterville-Trevose, PA 19053
                akarpf@karpf-law.com
                (215) 639-0801

Dated: February 24, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Victoria Gonzalez | : | CIVIL ACTION |
| v. | : | |
| Gwynedd Manufacturing, Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x )

| 2/24/2026 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?   Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.   Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify):*_____

*B. Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
GONZALEZ, VICTORIA

**(b)** County of Residence of First Listed Plaintiff: **Bucks**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS
GWYNEDD MANUFACTURING, INC., ET AL.

County of Residence of First Listed Defendant: **Montgomery**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TITLE VII (42USC2000);ADEA (29USC621)

Brief description of cause:
Violations of Title VII, ADEA and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- **DEMAND $**
- CHECK YES only if demanded in complaint:
- **JURY DEMAND:** [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 2/24/2026
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE